FLORENCE EGGERDING, PLAINTIFF-RESPONDENT, v. ALBERT BICKNELL, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT, AND STEVE CHONKA MOTORS, INC., A CORPORATION, DEFENDANT, v. UNIVERSAL UNDERWRITERS INSURANCE CO., A CORPORATION, THIRD-PARTY DEFENDANT-APPELLANT.

Argued October 31, 1955—Decided December 5, 1955.

*Mr. Baruch S. Seidman* argued the cause for the appellant Universal Underwriters Insurance Co. (*Mr. George W. Pressler,* attorney).

*Mr. Samuel H. Nelson* argued the cause for the plaintiff-respondent Florence Eggerding (*Mr. Robert Scherling,* attorney).

*Mr. Edward Sachar* argued the cause for the defendant Albert Bicknell.

The opinion of the court was delivered by

JACOBS, J. This is an appeal by the third-party defendant, Universal Underwriters Insurance Co., from an adverse judgment in the Law Division. We certified under *R. R.* 1:10–1.

On October 25, 1953 the defendant Albert Bicknell negotiated with the defendant Steve Chonka Motors, Inc. for the purpose of a used Chrysler automobile. He paid a deposit of $50 on the purchase price of $500 and was given possession of the automobile bearing dealer's plates issued to Chonka Motors. Thereafter he paid the balance of $450 and received the Certificate of Ownership issued to the seller Chonka Motors and an assignment of the certificate which was signed in blank by the seller's used car manager. The assignment, on a proper form prescribed by the Division of Motor Vehicles, contained the following warning to the seller in bold type: "Do not sign here until the name and address of buyer and date of sale are filled in above"; despite this clear warning the signature of the seller's authorized representative was affixed to the assignment at the indicated place without the insertion of any date or the name of any buyer. Although the parties dispute the actual date on which the assignment in blank was delivered to Albert Bicknell, they agree that, for present purposes, the delivery may be taken to have occurred prior to October 29, 1953. The assignment was ultimately dated November 15, 1953, and the name of Loretta Bicknell (wife of Albert Bicknell) was inserted as buyer; it was filed with the Division of Motor Vehicles which, on November 16, 1953, issued a Certificate of Ownership to Loretta Bicknell.

On October 29, 1953 the plaintiff Florence Eggerding was struck and injured by the Chrysler then being driven by the defendant Albert Bicknell and still bearing the dealer's plates issued to Chonka Motors. She sued both Bicknell and Chonka Motors, alleging that Chonka Motors negligently operated the automobile through Bicknell its "agent, servant

and employee." The jury returned a verdict of $15,000 against Bicknell and no cause for action against Chonka Motors. No appeal was ever taken from the judgment entered pursuant to the jury's verdict and all parties recognize its validity. However, Bicknell had filed a third-party complaint against Universal Underwriters Insurance Co. which had issued to Chonka Motors its Revised Standard Garage Liability Policy No. GL 28158; in his complaint, Bicknell alleged that under the terms of the policy Universal was obliged to pay any judgment which Eggerding obtained against him. The plaintiff Eggerding was, by stipulation, permitted to join this action and in due course motions by Eggerding and Bicknell for judgment against Universal were presented to the Law Division; for purposes thereof the facts as hereinbefore set forth were not disputed. The motions were granted by Judge Hughes with an accompanying oral opinion in which he determined that at the time of the accident title had not passed from Chonka Motors to Bicknell or his wife; that consequently Bicknell was an insured within the omnibus clause of the policy issued by Universal; and that Universal was "subject to judgment as under the Unsatisfied Judgments Act in favor of the plaintiff Eggerding, and subject to judgment of liability under the contract provisions of the policy in favor of the third-party plaintiff Bicknell." The appeal by Universal is from the ensuing judgment which was duly entered in the Law Division on June 17, 1955.

We are not concerned here with any question of liability from Chonka Motors to Eggerding. On that issue the jury's finding in favor of Chonka was consistent with our present law which declines to impose liability upon the owner of a car where its negligent operation resulting in injury was not by the owner either directly or through his agent, servant or employee. *Spelde v. Galtieri*, 102 *N. J. L.* 203 (*E. & A.* 1925); *Ruchlin v. A. G. Motor Sales Corp.*, 127 *N. J. L.* 378 (*Sup. Ct.* 1941); *Ianuzzi v. Public Service Interstate, etc., Co.*, 10 *N. J. Misc.* 1205 (*Sup. Ct.* 1932); *Hayes v. Brogan Cadillac-La Salle Co.*, 10 *N. J. Misc.* 11 (*Sup. Ct.* 1931).

*Cf. Missell v. Hayes,* 86 *N. J. L.* 348 *(E. & A.* 1914) ; *Doran v. Thomsen,* 76 *N. J. L.* 754 *(E. & A.* 1908). In some jurisdictions, including our neighboring State of New York, broad social legislation has been enacted imposing liability upon the owner for injury resulting from the negligent operation of his car so long as it was being operated by the owner or by any other person with the owner's consent. See *Prosser, Torts* 503 (1941) ; *Reese v. Reamore,* 292 *N. Y.* 292, 55 *N. E.* 2d 35 *(Ct. App.* 1944). In passing upon the liability imposed under its law the New York courts have repeatedly held that an automobile dealer who unlawfully permits another to drive a car bearing the dealer's plates is estopped to deny his ownership and his resulting legal responsibility. See *Reese v. Reamore, supra; Switzer v. Aldrich,* 307 *N. Y.* 56, 120 *N. E.* 2d 159 *(Ct. App.* 1954) ; *Kirkwood v. Campbell,* 307 *N. Y.* 854, 122 *N. E.* 2d 744 *(Ct. App.* 1954). *Cf. Shuba v. Greendonner,* 271 *N. Y.* 189, 2 *N. E.* 2d 536 *(Ct. App.* 1936). In the *Reese* case *supra,* Floyd E. Reamore, an automobile dealer, sold a Chevrolet to William J. Peltier and permitted him to use his dealer's plates beyond the time permitted by New York law. The plaintiff was injured as the result of the negligent operation of the Chevrolet by Peltier's agent and an action was instituted by the plaintiff against Reamore and others. In holding Reamore responsible to the plaintiff, the New York Court of Appeals said [292 *N. Y.* 292, 55 *N. E.* 2d 37] :

"he may not deny his ownership which he has falsely evidenced by permitting the unlawful use of his plates by another. Any other rule would be against public policy, would encourage fraudulent and illegal deceptions on those engaged in enforcing the traffic laws of the State and deprive the public of the protection which these laws are intended to extend to those using the public highways."

In our own State, the Legislature has clearly prohibited the use of the dealer's plates on a car transferred to the purchaser. See *Burke v. Auto Mart, Inc.,* 37 *N. J. Super.* 451 *(App. Div.* 1955). *R. S.* 39 :3–4 requires a purchaser to register his car before he permits it to be driven on the highways; *R. S.* 39 :3–18 provides that a dealer may obtain gen-

eral registration plates which "shall only be placed on any vehicle" owned by him; *R. S.* 39:3–30 provides that upon the transfer of ownership of any motor vehicle "its registration shall expire." *Cf. Buttinghausen v. Rappeport,* 131 *N. J. Eq.* 252 (*Ch.* 1942). Though we have no legislation comparable to the New York statutory provision which imposes liability, even without any showing of agency, upon an owner whose car was being operated with his consent, there would seem to be no just reason for declining to invoke the wholesome New York view which prohibits or estops a dealer from denying that he was the owner of a car which he illegally permitted to be operated with his dealer's plates. This would not be in conflict with the cases (*Hayes v. Brogan Cadillac-La Salle Co., supra; Burke v. Auto Mart, Inc., supra*) which have heretofore allowed such dealer to deny agency, but would serve, as against the dealer and those who stand in his stead, to establish the dealer's ownership in any instances (as here) where his ownership has been placed in issue.

■ Even apart from any doctrine in the nature of estoppel, we are satisfied that ownership of the Chrysler had not passed from Chonka Motors to Bicknell (or his wife) at the time of the accident on October 29, 1953. Our Legislature has prescribed a specific method for transferring title to motor vehicles and there have been many decisions stressing the need for complying strictly with the statutory directions. See *Merchants' Securities Corp. v. Lane,* 106 *N. J. L.* 169 (*E. & A.* 1929), reargument denied 106 *N. J. L.* 576 (*E. & A.* 1930); *C. A. Oesterman, Inc., v. King Auto Finance,* 111 *N. J. L.* 119 (*Sup. Ct.* 1933); *Vida v. Ruckle Brothers, Inc.,* 135 *N. J. L.* 570 (*Sup. Ct.* 1947); *A. Cresci & Sons, Inc., v. Steiker,* 7 *N. J. Super.* 76 (*App. Div.* 1950). In the *Lane* case, *supra,* the Court of Errors and Appeals aptly pointed out that, as a matter of public policy, the Legislature had prescribed a mode of transferring motor vehicles which differed "from that prevailing and required as to other chattels" and that, while the statute was primarily designed to prevent traffic in stolen cars, it unequivocally directed that

the original bill of sale shall be delivered to the original purchaser when the sale becomes complete and that "in all subsequent sales of the vehicle, there shall be attached to the original bill of sale, an assignment, by the subsequent vendor to his vendee."

In the instant matter no proper assignment within the contemplation of the statute was executed by the seller prior to the accident of October 29, 1953. The Director of the Division of Motor Vehicles has been duly authorized to promulgate rules and regulations and prescribe necessary forms. *R. S.* 39:10–4; *R. S.* 39:10–22. He did prescribe an assignment form which, for obviously sound reasons, directed that the seller's signature be withheld until the assignment form was completed by the insertion of the date and the name of the buyer. This direction was ignored by the seller Chonka Motors which signed the assignment in blank; under the statute the incomplete assignment did not legally serve to transfer title from Chonka Motors to Bicknell or his wife. See *R. S.* 39:10–2; *R. S.* 39:10–5; *R. S.* 39:10–9. *Cf. R. S.* 39:10–11; *R. S.* 39:10–15; *Merchants' Securities Corp. v. Lane, supra; C. A. Oesterman, Inc., v. King Auto Finance, supra.* Furthermore, the very omissions of the name of the buyer and the date of the transaction, coupled with the retention of the dealer's plates on the car, indicate that the parties themselves did not at that time envision a completed transaction transferring title from the seller to the buyer. Under the circumstances, the fact that the purchase price was fully paid does not negate the intention that there would be further steps taken before Chonka Motors would be divested of its ownership and that in the meantime any applicable responsibility and insurance coverage of Chonka Motors, as legal owner, would continue in normal effect.

We are satisfied that, at least for the purposes of the present proceeding, Chonka Motors was the owner of the Chrysler on October 29, 1953; the remaining question is whether, under the terms of its policy, Universal is contractually obligated to pay the judgment which the plaintiff

Eggerding obtained against Bicknell. The policy named Steve Chonka Motors, Inc. as the insured and covered (1) the "ownership, maintenance or use" of its premises for the purpose of an automobile dealer; (2) the "ownership, maintenance or use" of any automobile in connection with its operations as an automobile dealer and the occasional use for other business purposes; and (3) the use for non-business purposes of any automobile owned by it or in its charge and used principally in its operations as an automobile dealer. In its definition of "insured" the policy contained an omnibus clause which provided that it covered not only the named insured Chonka Motors but also "any person while using an automobile covered by this policy and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

 It seems clear to us that the very broad language of the policy was sufficient to cover Bicknell's operation of the Chrysler on October 29, 1953. Ownership of the car was in Chonka Motors which conducted business as an automobile dealer, and its possession by Bicknell while it still bore the dealer's plates was incidental to the incompleted transfer and transaction of purchase and sale. There is no reason to doubt that the parties contemplated that under such circumstances the policy would protect not only Chonka Motors as the named assured, but also Bicknell who was operating the automobile with the consent of the named assured. See *Neel v. Indemnity Ins. Co.*, 122 *N. J. L.* 560 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 130 (*E. & A.* 1940); *Rikowski v. Fidelity & Casualty Co.*, 117 *N. J. L.* 407 (*E. & A.* 1937). Our view, as to the meaning of the comprehensive language used by Universal in the policy prepared by it, is buttressed by the settled doctrine that such an insurance contract is to be liberally construed for the protection, not only of the named insured and those within its omnibus clause, but also the innocent plaintiff who was injured by the negligent operation of the insured automobile along a public highway. See *Rikowski v. Fidelity & Casualty Co., supra, Neel*

v. *Indemnity Ins. Co., supra. Cf. Mortgage Corp. of New Jersey v. Aetna Casualty & Surety Co.,* 19 *N. J.* 30, 36 (1955); *Schneider v. New Amsterdam Casualty Co.,* 22 *N. J. Super.* 238, 242 (*App. Div.* 1952).
Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For reversal*—Justice BURLING—1.