59 N.J. Super. 96 (1959)
157 A.2d 155
EASTERN ACCEPTANCE CORPORATION, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, PLAINTIFF,
v.
CAMDEN TRUST COMPANY, A BANKING INSTITUTION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Camden County Court.
Decided September 24, 1959.
*97 Messrs. Archer, Greiner, Hunter & Read (Mr. Thomas N. Bantivoglio appearing), attorneys for plaintiff.
Mr. George D. Rothermel, attorney for defendant.
DZICK, J.C.C.
The above matter was submitted to the court upon an agreed statement of facts with exhibits, depositions and memorandum of law. The agreed statement of facts as submitted by the parties is as follows:
J.O. Evaul, Inc., a corporation of New Jersey (hereinafter called "Evaul"), was an automobile dealer in Audubon, New Jersey, selling used and new automobiles to the retail *98 market. During the course of business of Evaul, it financed its purchase of new automobiles from Chrysler Motor Company through Eastern. Eastern is a finance corporation in the business of financing the wholesale and retail purchase of automobiles. The method of financing was by way of trust receipts with Eastern. Evaul executed powers of attorney to Eastern to facilitate such financing and the execution of the necessary papers. On December 24, 1948, by resolution of the board of directors of Evaul, Joseph J. Mullan, Perry B. Balzer and George J. McCutcheon, personnel of Eastern, were authorized to conduct and carry on the business of Evaul and in conjunction therewith were empowered to make, execute, sign, seal, endorse and deliver bonds, notes, chattel mortgages, trust receipts, bills of sale, conditional sale contracts, lease agreements, specialties and other instruments in writing in relation to matters and dealings between Evaul and Eastern. A copy of this resolution is annexed hereto as Exhibit 1. Pursuant to said resolution, a power of attorney from Evaul to the three above-named individuals was executed setting forth the above-mentioned powers. (Exhibit 2.)
A further resolution of Evaul, dated January 7, 1953, granted like powers to R.L. Myers, J.F. Arace and F.J. Lendemer, again personnel of Eastern. (Exhibit 3.) Thereafter, in conjunction with said resolution, a power of attorney to the above three named individuals was executed by Evaul. (Exhibit 4.) These powers of attorney were never terminated by Evaul.
On October 9, 1957 a statement of trust receipt financing was executed by Eastern and Evaul. Said statement of trust receipt financing was thereafter filed, as shown by the stamp thereon, with the Secretary of State of New Jersey on October 10, 1957. (Exhibit 5.) On the same date, October 9, 1957, Evaul and Eastern executed an agreement stating that all financing transactions hereinafter to be conducted are intended to be pursuant to the statement of trust receipt financing and governed by the Trust Receipts *99 Law of New Jersey. Said agreement further stated that any and all automobiles so financed will be covered by trust receipts. (Exhibit 6.)
There are three automobiles involved in this replevin action. They are listed by make and serial number as follows:

 Car No. 1 Plymouth LP2N11678
 Car No. 2 DeSoto LS 111503
 Car No. 3 Plymouth LP2N15987

The pattern of each transaction between Eastern and Evaul for all three cars here involved was identical. The cars were delivered to Evaul by auto carrier from Chrysler Motor Corporation, along with the manufacturer's certificate of origin. Eastern received in the mail a draft and an invoice containing a security bill of sale. Eastern would pay the draft and execute, on behalf of Evaul, pursuant to the power of attorney, a trust receipt, promissory note and a bill of sale.
Car No. 1, a Plymouth, was shipped on or before January 10, 1958 to Evaul. Eastern received the invoice No. NP 1212-261 (Exhibit 7) on January 10, 1958. This invoice contained a security bill of sale signed by W.M. Terrell of Chrysler Motor Corporation. On the same date, on behalf of Evaul, Eastern executed a bill of sale for car No. 1 (Exhibit 8), a trust receipt dated January 10, 1958 (Exhibit 9), and a promissory note dated January 10, 1958 (Exhibit 9). Evaul received car No. 1 and its accompanying manufacturer's certificate of origin. (Exhibit 10.)
Car No. 2, a DeSoto, was shipped on or before February 17, 1958 to Evaul. Eastern received the invoice No. 0124-16-721 on February 17, 1958. (Exhibit 11.) Said invoice contained a security bill of sale signed by P. Bassaet of Chrysler Motor Corporation. On the same date, Eastern executed, on behalf of Evaul, a bill of sale (Exhibit 12), trust receipt and promissory note. (Exhibit 13.) Evaul received car No. 2 and its accompanying manufacturer's certificate of origin. (Exhibit 14.)
*100 As to car No. 3, Plymouth Serial No. LP2N11678, Eastern received invoice No. NP0127-378 on February 25, 1958. (Exhibit 15.) Said invoice referred to a "DeSoto" automobile and contained a security bill of sale executed by W.H. Terrell of Chrysler Motor Corporation. On the same date, Eastern executed, on behalf of Evaul, a bill of sale (Exhibit 16), trust receipt and promissory note (Exhibit 17) relating to and describing therein a "DeSoto" automobile, Serial No. LP2N15987. Evaul received this automobile and its accompanying manufacturer's certificate of origin (Exhibit 18), which correctly describes it as a "Plymouth," Serial No. LP2N15987.
The next sequence of events occurred sometime after the delivery of the aforementioned automobiles to Evaul. Again, the pattern of the transactions which occurred was identical. On April 28, 1958 Evaul executed a conditional sales agreement showing J.O. Evaul, Inc., as seller and as buyer of car No. 2, a DeSoto. This conditional sales agreement was on the same date assigned to Camden Trust Co. (Exhibit 19.) At the same time and date, Evaul executed a promissory note payable to Evaul and assigned to Camden. (Exhibit 20.) The contract, note and the manufacturer's certificate of origin, also assigned to Camden, were placed in a draft envelope (Exhibit 21) and deposited in the Audubon National Bank, which then credited Evaul's account with the amount of the contract. The Audubon National Bank thereafter deposited said draft envelope with contents in Camden and received a credit from Camden to it. (Page 3, Depositions, dated 3/4/59.)
On May 8, 1958, a similar transaction occurred covering car No. 3, a Plymouth. (Exhibit 22.) Again on May 9, 1958, a similar transaction occurred covering car No. 1, a Plymouth. (Exhibit 23.) Each transaction was handled in the identical manner as the first.
Camden received from Evaul one payment in the amount of $150 on the note dated May 9, 1958 in the principal amount of $2,322.68, leaving a principal balance due and *101 owing of $2,172.68. (Page 25, Depositions, dated 3/4/59.) On the note dated May 8, 1958, in the amount of $2,698.64, Camden credited this account with the sum of $2,626.71 leaving a balance due and owing of $71.93. (Page 25, Depositions, dated 3/4/59.) On the note dated April 28, 1958, in the amount of $3,143.76, Camden received one payment from Evaul in the amount of $75, leaving a principal balance due and owing of $3,068.76. (Page 26, Depositions, dated 3/4/59.)
On June 26, 1958 Camden learned of the trust receipt financing of Evaul by Eastern and that said trust receipt financing covered the three automobiles here involved. (Page 26, Depositions, dated 3/4/59.) On June 26, 1958 Camden repossessed the three automobiles here involved from Evaul. (Page 32, Depositions, dated 3/4/59.) Camden obtained possession of the three automobiles by going to Evaul's place of business on June 26, 1958, at which time and place Evaul peacefully delivered the cars to Camden. At that time Camden also held the original manufacturer's statements of origin for each of the three cars, in addition to the conditional sales contracts and notes. These statements of origin had been sent to Evaul by Chrysler Corporation at the time the cars were shipped to Evaul, and had been retained by Evaul until the dates on which the conditional sales and notes were executed; on said days the respective statements of origin were assigned in blank by Evaul and delivered to Camden, together with the conditional sales contracts and notes, and were thereafter retained by Camden.
On the day this suit was instituted, and on the day the writ of replevin was served, Camden had possession of the three automobiles and the original manufacturer's statements of origin therefor, issued by the manufacturer to Evaul, assigned in blank by Evaul and delivered to Camden as above. On July 15, 1958, pursuant to a writ of replevin issued in this case, Eastern replevined the three automobiles here involved from Camden, having first established by affidavit the value of said automobiles as $7,200, and filed with *102 the court and/or the Sheriff of Camden County its surety bond dated July 14, 1958 in an amount equal to double said value, namely, $14,400, the surety being Federal Insurance Company, an insurance corporation of the State of New Jersey, duly licensed therefor.
At no time did Evaul, Eastern, or Camden register any of the three automobiles here involved with the Division of Motor Vehicles and secure a certificate of ownership. Camden did not file the conditional sales contracts referred to herein either with the Register of Deeds of Camden County or the Department of Motor Vehicles. (Page 8, Depositions, dated 3/4/59.)
There were many issues raised by counsel in their briefs and while the court recognizes that counsel ably briefed and argued these points, the court feels that it is not necessary to decide each and every one in order to make a determination in this cause. Basically, this is a simple replevin action. The plaintiff must have a title, absolute or qualified, and a right to the exclusive possession of the property at the time the suit is brought. Plaintiff must recover on the strength of its own title. Hunt v. Chambers, 21 N.J.L. 620, 624 (E. & A. 1845).
The plaintiff relies heavily on the trust receipt which it alleges was executed and delivered to it by virtue of the resolution and power of attorney of Evaul. A trust receipt contemplates a three-party transaction, which in this case would include first the manufacturer (the Chrysler Corporation); second, the dealer, Evaul, the trustee; and third, the plaintiff Eastern Acceptance Corporation, the entruster. In a trust receipt transaction the dealer places the order with the manufacturer, and title from the manufacturer should then be transferred to the entruster, the party who advances the money. In this particular matter title was transferred from the manufacturer to the dealer or trustee and never was the original title ever placed in the name of the plaintiff or entruster, as required in such a transaction.
*103 Our Legislature has prescribed a specific method for transferring title to motor vehicles, and there have been many decisions stressing the need for complying strictly with the statutory directions. Eggerding v. Bicknell, 20 N.J. 106, 111 (1955). Title to the three automobiles, which is the subject of this litigation, never passed from Evaul to the plaintiff corporation at the time the trust receipt was executed on October 9, 1957. As was aptly pointed out in the case of Merchants' Security Corporation v. Lane, 106 N.J.L. 169 (E. & A. 1929), as a matter of public policy the Legislature had prescribed a mode of transferring title to motor vehicles which differed from that prevailing and required as to other chattels, and while the statute was primarily designed to prevent traffic in stolen cars, it unequivocally directed that the original bill of sale should be delivered to the original purchaser when the sale becomes complete, and that in all subsequent sales of the vehicle, there should be attached to the original bill of sale an assignment by the subsequent vendor to his vendee.
In the instant matter no proper assignment within the contemplation of the statute was completed by either of the parties or by anyone at the time the alleged trust receipt financing statement between Eastern Acceptance Corporation, the plaintiff, and Evaul was executed. The bill of sale (which plaintiff executed by virtue of the resolution and power of attorney from Evaul) was a nullity, for Evaul at that very moment had in its possession the manufacturer's statement of origin to a motor vehicle, the original bill of sale, which was later physically delivered to Camden Trust Company. Plaintiff's alleged bills of sale were not and could not be bills of sale in compliance with N.J.S.A. 39:10-8 and 9. Proper title must be that coming to the plaintiff in the manner provided by the statutes heretofore referred to.
A custom that may be prevalent among dealers of automobiles and finance companies cannot override the express provisions of the statute. The plaintiff only had to have the manufacturer's original bill of sale and the assignment *104 of title, as required by N.J.S.A. 39:10-9, properly executed. The statute makes it unlawful to sell or purchase any motor vehicles except in the manner and subject to the conditions contained in the act.
There is no doubt that the plaintiff and Evaul created some legal relationship between themselves which plaintiff probably could enforce against Evaul. This is likewise true as between the defendant Camden Trust Company and Evaul. But this action is solely between Eastern Acceptance Corporation as the plaintiff and Camden Trust Company as the defendant to determine between these parties their respective rights to the possession of the automobiles. Neither of these parties has complied with N.J.S.A. 39:10-9, which deals with the sale, transfer and assignment of motor vehicles.
The question in an action for replevin is whether title and the right to possession at the time of the commencement of the action are in the plaintiff. The plaintiff must succeed or fail on the strength of his title or right of possession, and not on whether defendant has title or right of possession. In the matter sub judice the defendant denied title and right of possession in the plaintiff; hence the plaintiff has the burden to establish title in itself, absolute or qualified, with a right of exclusive possession at the time of the bringing of the action; otherwise plaintiff fails in its action and the defendant is entitled to judgment. Hunt v. Chambers, above, 21 N.J.L. 620 (E. & A. 1845). I find that the plaintiff has not established title or right of possession, as against the defendant Camden Trust Company. Since this is dispositive of the cause, I do not feel that the court need determine the other issues raised.
Judgment may be entered in favor of the defendant.