98 N.J. Super. 119 (1967)
236 A.2d 182
AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, PLAINTIFF,
v.
ERNEST MULLER, INDIVIDUALLY AND D/B/A ERNIE'S AUTO SALES; DAVID S. MULLER AND DONNA LEE MULLER, DEFENDANTS. CARL G. LADD, A MINOR, BY WILLIAM T. LADD, HIS GUARDIAN AD LITEM; AND WILLIAM T. LADD, IN HIS OWN RIGHT, INTERVENERS AND CROSS-CLAIMANTS,
v.
DONNA LEE MULLER AND AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 29, 1967.
*121 Mr. William S. Zink for plaintiff (Messrs. Bleakly, Stockwell and Zink, attorneys).
Mr. Robert E. Bailey for defendants Ernest Muller, individually and d/b/a Ernie's Auto Sales; David S. Muller and Donna Lee Muller (Messrs. Halpin and Bailey, attorneys).
Mr. George A. Streitz for interveners and cross-claimants Carl G. Ladd, a minor, by William T. Ladd, his guardian ad litem; and William T. Ladd, in his own right.
WICK, J.S.C.
This is an action instituted by American Hardware Mutual Insurance Company for a declaratory judgment to determine whether certain provisions of a garage liability policy issued to defendant Ernest Muller, individually, and doing business as Ernie's Auto Sales, extended coverage to an automobile titled in the name of defendant David S. Muller, son of Ernest Muller, and to defendant Donna Lee Muller, his wife and driver of the automobile in question when that automobile became involved in an accident. An injured third party, Carl G. Ladd, a minor, and his father William T. Ladd as guardian ad litem, intervened in this action as additional parties defendant and as cross-claimants against plaintiff and defendant Donna Lee Muller. They seek compensatory damages against defendant Donna Lee Muller as insured under the policy in question and therefore against plaintiff American Hardware Mutual Insurance Co. In the alternative, they seek compensation from plaintiff by way of estoppel.
On November 12, 1964 plaintiff American Hardware Mutual Insurance Company issued a garage liability policy to Ernest Muller, doing business as Ernie's Auto Sales at 410 North 4th Street, Vineland, New Jersey. The policy was issued for a period of one year and was to expire on November 12, 1965. It insured against automobile hazards involving any motor vehicle owned, maintained or used solely for the purpose of garage operations and for the use *122 for nonbusiness purposes of any automobile owned by or in the charge of the named insured, Ernest Muller or Ernie's Auto Sales, and used principally in garage operations. In its definition of "insured" the policy contained an omnibus clause which provided that it covered not only the named insured, but any person using an automobile to which the insurance applied with the permission of the named insured, providing such person's operation was within the actual scope of that permission.
On December 29, 1964 a 1965 Ford Cortina station wagon was purchased from Ford Motor Company by Ernest Muller, individually, doing business as Ernie's Auto Sales. Ernie's Auto Sales was in the business of selling English Ford automobiles and of doing general automotive repair work. Just prior to the purchase of this station wagon, the regular floor plan arrangement through which Ernie's financed the purchase of new cars to be sold in its business expired. Due to the limited capacity of Ernie's to sell automobiles in any great volume, Hammonton Investment and Mortgage Company of Hammonton, New Jersey, through whom the aforementioned floor plan arrangement had previously been obtained, refused to renew this financing arrangement. Unable to obtain financing for the station wagon either in his own name or in the business name, Muller on January 6, 1965 transferred title to that automobile to his son David S. Muller, who in his own name was able to obtain financing through State Farm Insurance Company. It appeared that this was the sole purpose for the transfer of title, and although title was in David's name, payments and upkeep were made by and control was retained by Ernest Muller. The license plates attached to the car in question were on the date of the accident, as well as on all other dates those registered to Ernie's Auto Service. At the time of this "transfer for convenience" David Muller worked with his father Ernest in the business of Ernie's Auto Sales.
The station wagon in question was used by Ernie's Auto Sales primarily for demonstration, display and advertisement *123 purposes. Occasionally, however, this vehicle was used for personal reasons by Ernest Muller and, with his permission, by David Muller and by David's wife, Donna Lee. On June 21, 1965 permission was sought by Donna Lee for the use of this car for the purpose of taking a pleasure trip to Ocean City, New Jersey. That permission was granted and Donna Lee proceeded on her pleasure trip in the station wagon. While returning from this trip and traveling in a westerly direction on State Highway 49 in the City of Estell Manor, Atlantic County, New Jersey, Donna Lee lost control of the vehicle. It crossed the eastbound lane and struck a tree. There were four people in the car: the operator, Donna Lee; Laura Lee Muller, age 11 months; William Sheldon, age 15; and Carl Ladd, age 15. All were injured parties. Because the automobile was titled in the name of David S. Muller, and because the named insured under the garage liability policy was Ernest Muller, doing business as Ernie's Auto Sales, plaintiff disclaims liability. Defendants contend that the facts of the case establish that although the station wagon was titled in the name of David, Ernest Muller was the actual owner of the vehicle; that is, the transfer to David was merely one of convenience, with all true incidents of ownership remaining in Ernest. The argument continues that since Ernest was the actual owner and since the vehicle was being used by Donna Lee with his permission at the time of the accident, plaintiff is liable under those provisions of the policy covering use of automobiles owned by the insured and driven by individuals with his permission. It is argued in the alternative that even if actual ownership is not found by this court to be in the insured, that he is sufficiently "in charge of" this automobile to bring it within the terms of the policy. Defendants also contend that the facts of this case are sufficient to establish a partnership between David and Ernest Muller in the business of Ernie's Auto Sales, and that under the applicable law, transfer of insured property used in the partnership business from one partner to the other does not affect the coverage of the *124 insurance since the change in title is merely nominal and the interested party actually remains the same, i.e., the business itself. Defendants Carl and William Ladd further contend that even if the court finds no liability under the terms of the policy, plaintiff failed to notify them of its disclaimer of liability before the 90-day period for filing with the Unsatisfied Claim and Judgment Fund of the State of New Jersey had expired, and that this conduct is sufficient neglect to estop plaintiff from disclaiming liability against them.
The primary issue for consideration is whether transfer of the legal title of the station wagon by Ernest Muller to his son David for the sole purpose of financing that automobile, is sufficient under the applicable law to preclude Ernest from being the true owner of the automobile and thus bringing it under the insurance policy issued to him by plaintiff insurance company. Plaintiff cites the case of Eggerding v. Bicknell, 20 N.J. 106 (1955), as interpreted by Velkers v. Glens Falls Ins. Co., 93 N.J. Super. 501 (Ch. Div. 1967), for the proposition that it is. The Eggerding case involved the purchase of an automobile where there was an improper assignment of title papers from seller to buyer under the relevant provisions of the Certificate of Ownership Law. While operating the automobile which was the subject of the transfer and which still retained license plates registered to the seller, the buyer was involved in an accident. The injured party sued the seller, who was insured under a garage liability policy parallelling that of the instant case. He claimed that the seller was still the owner of the car; that the buyer was merely driving it with his permission, and that under the policy in question the insurance company was liable. The court agreed.
Similar facts were raised in the Velkers case, where the court was called upon to interpret Eggerding and stated:
"The court there held for purposes of insurance coverage, legal title to an automobile could not be considered transferred until the *125 parties have strictly complied with the rules promulgated by the Director of the Division of Motor Vehicles * * * respecting transfer of title to automobiles." (at p. 514; emphasis supplied)
Although at first glance it might appear that this statement stands for the proposition asserted by plaintiff, it is the opinion of this court that plaintiff overstates the position taken by these decisions, and that Eggerding and Velkers are not dispositive of the issue raised by the facts in the case at hand.
The question raised by Eggerding and Velkers was whether an improper transfer under the relevant statute was sufficient to preclude the transferee from becoming an "owner" for insurance purposes. The court held that ownership could not be divested from a transferor and become vested in a transferee absent compliance with the statute. The issues there and here are not alike. The question here is not one of defective transfer of an automobile and its effect on "ownership" for insurance coverage purposes; to the contrary, the transfer in the instant case was in exact compliance with the Certificate of Ownership Law. The question here is whether a transfer in compliance with the act precludes the transferor from retaining property in the automobile subject to the transfer. To assert that Eggerding and Velkers purport to decide this issue is to overstate the breadth of those decisions. There is no language in either case purporting to assert that if the statute was met, the holder of legal title was of necessity the owner for insurance coverage purposes; the question of the divestment of ownership from a transferor when the Motor Vehicle Act is violated cannot by the farthest stretch of the imagination be equated to the question of retention of ownership by a transferor when that same statute has been complied with.
A diligent search into the decisions of this State reveals that the New Jersey courts have not yet had occasion to rule upon the precise issue before this court. It thus becomes necessary to look for guidance to the cases of other jurisdictions having certificate of ownership laws not unlike *126 that of New Jersey. The Texas case of Pioneer Mutual Compensation Co. v. Diaz, 178 S.W.2d, 121 (Tex. Civ. App.), affirmed 177 S.W.2d 202 (Sup. Ct. 1944), is directly in point. In that case defendant Diaz was the operator of a certain liquor establishment. He had no permit to operate a delivery truck and conceived the law to be such that he could not lawfully deliver goods from the liquor store to its customers. To remedy this situation Diaz entered into a delivery agreement with one Adrian Garcia, an owner of taxicabs who had such a permit. As Garcia's taxicab business increased, it became more difficult to have deliveries made in that manner. Thus, for the purpose of making more prompt and reliable deliveries, Diaz purchased a truck for cash and through an arrangement with Garcia had the title thereto placed in Garcia's name, obligating himself to pay a percentage of the total business done by the truck in return for the use of Garcia's permit. While so titled the truck was involved in a collision and the insurance carrier for Diaz, which had issued a policy to insure him as owner, sought to disclaim liability on the ground that he was not, in fact, the owner because the truck was titled in Garcia's name. Finding that the carrier was liable, the court stated:
"We are of the opinion the jury finding that Diaz was the owner is supported by the evidence. The Certificate of Title Act * * * declares the legislative purpose and intent * * * to be to lessen and prevent theft, the importation and traffic in stolen motor vehicles, and to enforce a disclosure of all liens and encumbrances. The act does not prohibit the registration of a motor vehicle in the name of one other than the true owner * * *. It merely provides, after the first sale the title shall pass and vest only by a transfer of the certificate of title, Sec. 33, by the owner designated in the certificate of title." (at p. 123)
It is significant to note that the statute mentioned in the above quotation is strikingly similar to our Certificate of Ownership Law, both as to the basic reasons for enactment and the transfer provisions. Thus, R.S. 39:10-3 provides *127 that the purpose of the law is "to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state." And R.S. 39:10-9 provides that sales of automobiles, in the case of absolute sale, can only be effective to pass legal title by "assignment of the certificate of ownership." Like the Texas statute, our act refers to transfer of title and not transfer of "ownership." It should also be noted that the factual pattern in the Diaz case and that of the instant case parallel one another.
Resembling the instant case even more closely is United States Casualty Co. v. Bain, 191 Va. 717, 62 S.E.2d 814 (Va. Sup. Ct. App. 1951). In that case a truck was purchased and paid for by the Trant Company. The evidence disclosed that for matters of convenience title to the truck was placed in the name of one Sorey. The truck was left in his custody and he had the right to use it for his own private purposes. After a collision in which the truck was involved, Trant's insurance carrier disclaimed liability relying on the fact that there was a violation of the sole ownership clause of the policy in that title to the truck was not in the name of the Trant Company. The court stated:
"We do not think there is any merit in this contention. The evidence is uncontradicted that the Trant Company purchased the truck with its own funds and that title to the truck was placed in Mr. Sorey's name purely as a matter of convenience. Mr. Sorey did not claim to be owner of the truck. The title certificate was not conclusive of ownership but only prima facie, and we think that it was clearly shown that Trant Company was the sole owner." (at p. 815)
As in the Bain case, the title in the case at bar was placed in the name of David S. Muller merely as a "matter of convenience"  namely, to obtain financing for the automobile in question. Here, as in Bain, the vehicle was purchased, paid for and maintained by Ernest Muller. Similarly, the holder of legal title does not claim to be the owner of *128 the automobile. To the contrary, he denies this. The identity between the two cases is obvious.
Examination of the New Jersey Certificate of Ownership Law in light of the guidance offered by the Diaz and Bain cases would indicate to this court that notwithstanding the fact that legal title was in David Muller, Ernest Muller was the true owner of the station wagon. At the outset, it should be borne in mind that R.S. 39:10-2 defines the term "title papers," which is synonymous with certificate of ownership, as being "evidence of ownership of a motor vehicle." Were it the intention of the Legislature to make a certificate of ownership conclusive, it would be a simple matter to insert the word "irrebutable" before "evidence." It is to be further noted that this State has consistently held that "registration" is presumptive evidence of ownership which may be rebutted. See, e.g., Horowitz v. Schanerman, 117 N.J.L. 314 (E. & A. 1936); Tinsman v. Parsekian, 65 N.J. Super. 217 (App. Div. 1961). Although these holdings are not directly applicable to the issue at hand, they are indicative of the court's inclination as to the legislative intent in Title 39. Furthermore, R.S. 39: 10-3 specifically provides that the chapter is to be interpreted and construed so "as to effectuate its general purpose to regulate and control titles to * * * all motor vehicles in this state * * *." (Emphasis supplied). Nothing is said in this provision which would indicate that the act changes the common law concept and meaning of the term "owner." As pointed out by defense counsel, in view of the stated legislative purpose of the statute, namely, to "control titles" so as to prevent disposal, use or operation of stolen motor vehicles or those with fraudulent titles, it is difficult to conceive that the Legislature had any thought of adding a new element for the determination of "ownership" where property in motor vehicles is concerned, especially without specifically providing therefor.
Plaintiff argues, however, that the statute does provide for a new definition of "owner." In support of this proposition *129 it cites R.S. 39:1-1, which defines "owner" as "a person who holds the legal title of a vehicle * * *." Attention should be directed to the preface of that section which states, "as used in this subtitle." These words are so defined. It is apparent that the definition cited by plaintiff is limited to the use of the word "owner" in R.S. 39:1-1, et seq. and therefore does not control the conclusions of this court. Indeed, the very necessity for defining the term "owner" by R.S. 39:1-1 is indicative of the fact that the Legislature was aware that this term has definitions outside the act other than the holder of legal title.
In view of the foregoing observations and conclusions, it is the decision of this court that the true owner of an automobile may be one other than the holder of legal title to that vehicle. Under the facts of the instant case, this court finds that Ernest Muller was the true owner of the station wagon notwithstanding the fact that legal title was in David S. Muller. It follows that under the relevant provisions of the garage liability policy, as set forth earlier in this opinion, the vehicle was covered while driven by Donna Lee Muller with the permission of Ernest Muller on the date of the accident.
Since this court has concluded that Ernest Muller was the owner of the car in question and that the automobile was therefore covered by the policy issued to him by plaintiff, it is unnecessary to consider alternative arguments raised by defendants in the event that conclusion was not reached.