154 N.J. Super. 326 (1977)
381 A.2d 387
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ONE (1) FORD VAN, ECONOLINE, WHITE, BEARING DELAWARE REGISTRATION C80-195 S/N - E14GHRO9151 IN POSSESSION OF EDWARD H. KURTH; EDWARD H. KURTH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1977.
Decided November 17, 1977.
*329 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Edward H. Kurth, argued pro se for appellant.
Mr. William F. Boland, Jr., Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by ANTELL, J.A.D.
Appellant is the registered owner of a motor vehicle adjudged forfeited to the State of New Jersey pursuant to N.J.S.A. 24:21-35 b(4). The trial judge found that it had been used for the transportation of marijuana, a controlled dangerous substance, and the material facts are recited in its written opinion reported at 143 N.J. Super. 512 (Law Div. 1976). Briefly, appellant gave unrestricted use of the vehicle to his son who, in turn, lent it to Mark Stenerson, knowing that it would be used for the illicit purpose. Finding that Kurth, Jr., and not Kurth, Sr., who "[u]nquestionably" did not know of the transaction, was the "true owner" of the car, the judge concluded that *330 the case did not come within the exception from forfeiture provided for "the owner" of the vehicle who establishes that he had no knowledge of the transaction. N.J.S.A. 24:21-35(b)(4)(b).
On this appeal the questions presented are: (1) who was the owner of the vehicle within the meaning of the statute? If Kurth, Sr. was the owner, (2) does his lack of knowledge bring the case within the exception? If the case does not fall within the exception (3) is the judgment of forfeiture nevertheless subject to attack on due process grounds arising from the 14-month delay between seizure of the vehicle and institution of the forfeiture proceeding?
As the trial judge correctly observed, the Legislature obviously intended the sanction of forfeiture as a means of deterring the traffic in illicit drugs. But it clearly manifested its belief that forfeiture of a vehicle would not serve the statutory policy where the owner thereof was of innocent knowledge. It did so by excepting such vehicles in specified cases explained infra. When called upon to specify what the Legislature intended by "owner" the trial judge drew heavily on the assumption that by defining the term conducively to forfeiture it would be fulfilling its primary duty of effectuating the underlying statutory policy. As he wrote at page 517 of his opinion:
N.J.S.A. 24:21-35b(4)(b) is but a section of the New Jersey Controlled Dangerous Substance Act adopted by L. 1970, c. 226, and must to the greatest extent possible be given consideration and effect sensitive to the spirit of the legislative direction and thus we must not blindly follow the literal sense of the terms. State v. Davis, 68 N.J. 69 (1975).
To accept and apply the limited and technical definition of the word "owner" and hold it to be restricted to the registered title owner would be an open subversion of the legislative intent. The eradication of drug traffic and its promiscuous use is a matter of grave concern to society in general, and to our courts and Legislature in particular. That is the obvious, reasonable and clear intent and purpose of the New Jersey Controlled Dangerous Substance Act.
The conclusion reached below was evidently induced by the belief that "eradication of drug traffic and its promiscuous *331 use" as a legislative goal was a proper factor to be weighed in ascertaining who the "owner" was. In fact, the two are unrelated. As we noted, the Legislature determined that forfeiture of an innocent owner's vehicle would not serve the purposes of the New Jersey Controlled Dangerous Substance Act. Yet the judge's inquiry was largely governed by the aim of fostering that very policy which the lawmakers said should not apply to an innocent "owner." He first decided which of the two Kurths had guilty knowledge, and then concluded that given its choice the Legislature would want that person found to be the owner.
Would the result here have been the same if it were Kurth Sr. and not Kurth Jr. who had guilty knowledge? Apparently not. The judge found Kurth Jr. to be the owner because appellant had released "the benefits of ownership" to his son, including "custody," "use" and "control." But resting upon the uncontradicted facts that appellant paid for the vehicle, retained title in his name, purchased insurance on the car in his name as owner, paid for repairs, paid for gas and oil in the form of an allowance to his son, and taking into account the lack of any understanding between father and son that the latter would be the owner, the judge could just as plausibly have found appellant to be the owner. The Legislature did not intend the courts to have such broad license to grant or withhold relief from forfeiture in this conveniently opaque situation.
While it is true that forfeiture statutes, like all statutes, must be fairly and reasonably construed, it should be remembered that generally forfeitures are not favored in the law, particularly where the Legislature has provided appropriate exceptions from the scope of the forfeiture provision.
Statutes designed to relieve from the rigors of forfeiture are looked on warmly and construed liberally, so as to afford the maximum relief, and where a liberal construction of a statute will avoid the imposition of a forfeiture it will be so construed. On the other hand, a statute imposing a forfeiture should be construed strictly *332 and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation.... The courts will not search for a construction to bring about a forfeiture; nor will a constrained construction be indulged in in order to create a forfeiture. [37 C.J.S., Forfeitures, § 4b]
Also see, 36 Am. Jur.2d, Forfeitures and Penalties, § 8; U.S. v. One 1936 Model Ford, 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1939); State v. Garcia, 114 N.J. Super. 444, 447 (Law Div. 1971); State v. La Bella, 88 N.J. Super. 330, 338 (Law Div. 1965). What governs in each case is the intent of the lawmakers. We take note that State v. Moriarty, 97 N.J. Super. 458, 474 (Law Div. 1967), aff'd 102 N.J. Super. 579 (App. Div. 1968), aff'd sub nom. Farley v. $168,400.97, 55 N.J. 31 (1969), is to the effect that forfeiture statutes are not to be strictly construed in favor of the defendant. The observation there made, however, was not essential to the court's opinion and the particular point was not specifically passed upon by either of the appellate courts which reviewed that decision. Furthermore, the forfeiture statute there involved did not contain an excepting provision as in the case before us.
By providing an exception in the case of innocent "owners" the Legislature intended to provide a standard of fixed and precise meaning unaffected by the vagarious factual patterns as they might arise in the individual cases. Under N.J.S.A. 39:1-1 the word "owner" is defined to mean "a person who holds the legal title of a vehicle." While it is true that the definition is provided for use "in this subtitle," we have held that the registered owner "is presumptively the real owner." Tinsman v. Parsekian, 65 N.J. Super. 217, 222 (App. Div. 1961). In this connection the following discussion in Merchant's Indemnity Corp. of N.Y. v. Eggleston, 68 N.J. Super. 235 (App. Div. 1961), aff'd 37 N.J. 114 (1962), is apposite:
* * * Nor can we say, objectively, that the holder of legal title is not the "owner" in one proper sense of the term. Both common usage and our Motor Vehicle Registration Law, N.J.S.A. 39:3-3 *333 et seq., so recognize him. Moreover, our Supreme Court, in a number of cases in recent years, has held that the above statutes constitute the official reflector of ownership of a motor vehicle. See National City Bank of New York v. Del Sordo, 16 N.J. 530 (1954), involving the recording of chattel mortgages on motor vehicles; Eggerding v. Bicknell, 20 N.J. 106 (1955), holding that an automobile dealer which had yet to transfer title to one of its vehicles in accordance with the statutory procedure was still the "owner" thereof for purposes of insurance coverage under the terms of its policy; and Norris v. Allstate Ins. Co., 34 N.J. 437 (1961), also holding that the named assured had acquired "ownership" of a vehicle within the meaning of a liability clause when he acquired statutory title thereto, even if it were shown that the car was in fact used exclusively by his son and intended as a gift for the son. The important point concerning these cases, and distinguishing them from the instant matter, is that no assertion of fraud or misrepresentation with respect to ownership was involved. The decisions simply recognized the proposition, with which we are in full accord, that the holder of statutory title to a motor vehicle is in a real sense the `owner' thereof. * * * [at 247-248]
American Hardware Mutual v. Muller & Ladd, 98 N.J. Super. 119 (Ch. Div. 1967), aff'd 103 N.J. Super. 9 (App. Div. 1968), certif. den. 53 N.J. 85 (1968), and State v. Closter Village, 31 N.J. Super. 566 (Cty. Ct. 1954), aff'd 18 N.J. 179 (1935), relied upon by the trial judge, are distinguishable. The former was a declaratory judgment action to determine coverage under an insurance policy. There the insured was held to be the "owner" of the vehicle where it was purchased, paid for and maintained by him, even though it was titled in the name of his son in order to obtain financing, and where the insured occasionally gave permission to his son and daughter-in-law to use the vehicle. State v. Closter Village, Inc., held only that the term "owner * * * of real estate or any leasehold or other interest therein" as used in an embezzlement statute was of sufficiently broad meaning to include purchasers under contract.
We conclude that the term "owner" referred to in N.J.S.A. 24:21-35 b(4)(b) is intended to mean the registered title holder. From this it follows that the appellant is the owner of the vehicle here involved.
*334 The question next arises as to whether, under these circumstances, the vehicle was excepted from the forfeiture provision. In its entirety the excepting subparagraph provides:
(b) No conveyance shall be forfeited under the provisions of this section by reason of any act or omission, established by the owner thereof to have been committed or omitted without the knowledge or consent of such owner, and by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State; * * *.
It will be noted that there are two separate features to the exception: where the owner establishes that the unlawful act or omission was committed or omitted (1) without his knowledge or consent, and (2) by a person other than the owner while the conveyance was the subject of unlawful possession by another person in violation of specified criminal laws. If read literally, condition (1) necessarily includes condition (2) since if a conveyance was unlawfully and criminally in the possession of one other than the owner, the illegal act or omission would have to be without the owner's knowledge or consent and there would be no reason to recite condition (2). Such a reading would violate familiar strictures against treating any part of a statutory enactment as surplusage or meaningless. Hoffman v. Hock, 8 N.J. 397, 406-407 (1952); Oldfield v. New Jersey Realty Co., 1 N.J. 63, 68 (1948); Fiscella v. Nulton, 22 N.J. Super. 367, 372 (App. Div. 1952). But our function is to ascertain and give meaning to the obvious purpose and intent of the lawmakers even though imperfectly expressed and even though not in accord with a literal reading of the statute. N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, 338 (1972); Roman v. Sharper, 53 N.J. 338; 342 (1969). We are free to add or delete phrases where necessary to arrive at the legislative intent. State v. Madewell, 117 N.J. Super. 392, 396 (App. Div. 1971), aff'd 63 N.J. 506 (1973).
We find that the distinguishing feature of condition (2) is its reference to "possession" of the conveyance by one *335 other than the owner. As we have said, this provision would have been unnecessary if condition (1) was intended to preclude forfeiture under any and all circumstances where the owner was innocent of knowledge. What was undoubtedly intended was to create a different exception on the understanding that condition (1) applied only where the owner was in possession of the vehicle. So read, the two features of this provision except the conveyance from forfeiture where it is established by the owner that the act or omission was committed or omitted (1) without the owner's knowledge or consent while the conveyance was in his possession, or (2) by one other than the owner while the conveyance was the subject of unlawful criminal possession. The owner's innocence, therefore, is a defense to forfeiture only where he is in possession of his vehicle or where it is unlawfully in the possession of another. It may not be a defense, however, if the act or omission occurs while the vehicle is lawfully in the possession of another.
By rejecting a literal reading of condition (1) we avoid ascribing a meaningless purpose to condition (2) and give effect to a rational legislative scheme. If the owner, while operating his car, transports a passenger who is secreting contraband, unknown to the owner, the exception applies. If the vehicle is stolen and thereafter used to transport contraband, the exception applies. Where he allows the vehicle to be freely used by another who knowingly permits it to be used or uses it to transport contraband the exception does not apply, regardless of the owner's innocence. The effect of the threatened sanction in the last-named case is to encourage the owner to show care in the choice of those to whom he entrusts the use of his car and insures that the act will not be frustrated by the simple expedient of registering legal title in someone else.
Since appellant's vehicle was lawfully in his son's possession we conclude that the exception provided by N.J.S.A. 24:21-35 b(4)(b) does not apply.
*336 Were it not for the fact that the case presents considerations other than those which we have thus far treated we would affirm the judgment of forfeiture.
From our review of the record the vehicle was seized by the police on December 12, 1974 and the forfeiture action was begun February 3, 1976. During the intervening 14 months it remained in the possession of the police, and although the authorities knew appellant was the registered owner of the vehicle, he was not informed that it was being detained. N.J.S.A. 24:21-35 c(4) provides:
In the event of seizure pursuant to paragraphs (3) and (4) of this subsection, proceedings under subsection d. of this section shall be instituted promptly. [Emphasis supplied]
The requirement of "prompt" action is of constitutional dimension. Where the delay is unjustified forfeiture proceedings are defeated on the reasoning that the deprivation of property during the intervening period constitutes a denial of due process. United States v. One Motor Yacht Named Mercury, 527 F.2d 1112 (1 Cir.1975) (12 months delay); States Marine Lines, Inc. v. Shultz, 498 F.2d 1146 (4 Cir.1974) (16 months delay); Sarkisian v. United States, 472 F.2d 468 (10th Cir.), cert. den. 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973) (9 months delay); United States v. A Quantity of Gold Jewelry, 379 F. Supp. 283 (C.D. Cal. 1974) (22 months delay); Everett v. Slade, 83 Wash.2d 80, 515 P.2d 1295 (1973) (2 months delay).
The rule is traceable to United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), involving the detention of obscene material. In that case the statute under which forfeiture proceedings were instituted (19 U.S.C.A. § 1305(a)) did not contain explicit time limits governing when the action must be brought, as called for by the court's earlier decisions. The court determined what a reasonable time would be for cases brought under that statute and read in a specific requirement of 14 *337 days in order to bring the statute "in harmony with constitutional requirements." Id. at 368 and 373-374, 91 S.Ct. 1400. The State argues that the immediate concern of that case is with the protection of First Amendment rights. But this contention is fully treated by the following language of the court in States Marine Lines, Inc. v. Shultz, supra:
It is clear that the decision in United States v. Thirty-Seven Photographs may be distinguishable from the case at bar if it is read narrowly as involving primarily the court's concern with the government's use of forfeiture statutes to impose prior restraints on First Amendment rights. Such a distinction is of doubtful validity, for although it is true that the Supreme Court has expressed a particular aversion to the prior restraint of First Amendment rights, is has in recent years been equally solicitous in ensuring that persons not be deprived of property without due process of law. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970); Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). See also, Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 113, 31 L.Ed.2d 424 (1972) in which the court stated:
"Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a `personal' right, whether the `property' in question be a welfare check, a home or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized." 405 U.S. at 552, [92 S.Ct. 113].
When this court considers that the Supreme Court has interpreted the due process clause of the Fourteenth Amendment to require an evidentiary hearing by a State prior to the suspension of a driver's license, Bell v. Burson, supra; or the termination of welfare benefits, Goldberg v. Kelly, supra; or garnishment of wages, Sniadach v. Family Finance Corporation, supra; or the repossession of goods sold under a constitutional sales contract, Fuentes v. Shevin, supra, it would be incongruous indeed if the federal government were left completely unrestrained under the identical wording of the Fifth Amendment following the seizure of goods by customs officers. [498 F.2d at 1154]
The doctrine has been applied in a variety of factual contexts involving not only obscenity violations, but customs *338 violations and the seizure of motor vehicles used in connection with the transportation of contraband and other merchandise as well. As to automobiles it has been said that the deprivation of property resulting from the detention, apart from loss of use, lies in the fact that the vehicle is a "wasting asset." United States v. One 1971 Opel G.T., 360 F. Supp. 638, 641 (C.D. Cal. 1973).
Where the defense did not prevail the case appeared to rest on facts evidencing a contribution to the delay by the claimant. U.S. v. One 1973 Ford LTD., 409 F. Supp. 741 (D. Nev. 1976). But see, Boston v. Stephens, 395 F. Supp. 1000, 1004-1005 (S.D. Ohio 1975); United States v. One 1971 Opel G.T., supra at 640-641.
The record before us contains no suggestion of appellant's responsibility for the delay. The only justification offered for the lengthy interval is an oral directive of the assignment judge that forfeiture proceedings were to await the outcome of the criminal cases which were related to the seizure of the property. We are told that the directive arose from the assignment judge's concern that the claimant's privilege against self-incrimination might otherwise be jeopardized. Although the assignment judge could determine when the hearing would be calendared, it lay beyond his authority to restrict the prosecutor from instituting the proceeding, and it is not even claimed that this was the purport of the directive. We are entirely satisfied that no impediment existed to the institution of suit and giving notice to the owner. Moreover, the State concedes that the forfeiture proceeding does not depend upon the outcome of the criminal prosecution.
Under the circumstances presented we find no merit to the explanation offered by the State in justification for the lengthy delay. The authorities were obligated to bring their action "promptly." Nothing in the record justifies their failure to do so and the appellant was consequently denied due process of law. The judgment of forfeiture is reversed. Claimant's recovery is limited to return of the vehicle.