173 N.J. Super. 478 (1980)
414 A.2d 600
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JAMES MICHAEL ROSE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 1980.
Decided May 7, 1980.
*480 Before Judges FRITZ, KOLE and LANE.
James R. Murphy, Special Deputy Attorney General, argued the cause for appellant (James F. Mulvihill, Acting Mercer County Prosecutor, attorney).
Raymond A. Gill, Jr. argued the cause for respondent (Dato, Thompson, Kracht & Stoller, attorneys).
The opinion of the court was delivered by KOLE, J.A.D.
This appeal, accelerated by order of the Supreme Court after the State's motion for leave to appeal to us was granted by that court, involves the question of whether $19,475 in cash seized from defendant's automobile by the police should be returned to defendant or retained by the state, temporarily at least.
*481 The trial judge granted defendant's motion to suppress marijuana and related items and the money on the ground that the police lacked probable cause to conduct the search. He directed the return of the seized evidence, including the money. The correctness of his determination to suppress the evidence is not contested by the State. It claims only that the order directing the return of the cash to defendant is in error since (1) the cash was related to illegal drug transactions; (2) the judge should have given it adequate time to establish that relationship, which it could have done by presenting proof thereof, and (3) it was precluded from so doing when the judge held that it had received adequate notice that the motion to suppress would also include the cash and the request for its return to defendant.
The original motion to suppress relating only to marijuana was filed on September 11, 1979. At about 4 p.m. October 18, 1979, the day before the hearing on the motion, the State received notice that defendant would apply to amend the motion to include the cash and a request for the return of defendant's seized property, including the $19,475 in cash.
At the hearing on the motion to suppress on October 19, 1979, the State objected to the amendment to include the cash on the ground that it had not been given proper notice thereof, but the basis for its objection was not that which is presently raised on this appeal. It then indicated that it would not want the money returned since there was a pending grand jury investigation involving the money and defendant and how he obtained the funds. It said that the State "would like to use the money as a Grand Jury Exhibit for this pending investigation." The judge granted the application to include the cash as part of the motion to suppress. Nevertheless, in effect he provided the State with the remedy it then sought relating to the money. He noted that the State knew that the cash was seized with the marijuana and that, therefore, splitting consideration of the entire property *482 seized into two separate items  marijuana and cash  would be unreasonable. He stated that there was no "representation" by the State that there was "anything criminal in the possession of that money." Accordingly, after deciding that the seized evidence should be suppressed, at the end of the suppression hearing he orally ordered the return of the money but gave the State a three-week delay for the purposes of the grand jury investigation. The ensuing formal order was entered November 8, 1979 directing the return of the money on November 9, 1979. That date was later extended to November 26, 1979.
Faced with the stipulated facts presented at the suppression hearing, the judge on his own motion might well have considered detaining the money rather than returning it to defendant, to afford the State a reasonable opportunity to demonstrate to him that it was sufficiently tainted with illegality to justify its being forfeited or permanently retained by the State. Among other things, the facts show that after the police officer took the brown bag containing the money from defendant and found the substantial amount of money therein, defendant endeavored to explain that the money represented receipts from his father's ice cream business, and he was delivering it to the bank. But he admitted that he had no deposit slips or other papers that would support this explanation. Further, in checking the bag the trooper found numerous three by five envelopes with first names or slang terms on them. The envelopes contained ledgers which indicated to the police officer that they related to the sale of illegal drugs. Defendant denied any knowledge of the envelopes or ledgers explaining that they must have been placed in the bag by a friend without his knowledge. After the officer arrived with defendant at police headquarters, according to the officer, defendant volunteered: "What do you think I am? Some big time drug dealer? Search the car."
But we cannot fault the judge's failure to take such action since the State never requested an adjournment for that purpose. *483 It sought retention of the money for use at the pending grand jury investigation in November 1979, which did not result in an indictment. Additionally, the disorderly person complaint relating to the only offense with which defendant was charged  possession of marijuana  was dismissed in November 1979.
The State's change of position on this appeal requires that if the relief it requests is granted, we exercise our original jurisdiction predicated not only on the record before the judge but also on matters developed and brought to our attention after the hearing before him, apart from the abortive grand jury investigation and the dismissal of the disorderly person complaint against defendant. Thus, even though we might not consider the order directing the return of the money to be plain error, R. 2:10-2, we cannot proceed in the circumstances of this case as if these later matters do not exist. Resort to the authority to exercise our original jurisdiction is particularly appropriate here where there is an emergent matter implicating the public interest. R. 2:10-5. See Blasi v. Ehret, 118 N.J. Super. 501 (App.Div. 1972); Market Maintenance Co. v. Newark, 63 N.J. Super. 233, 235 (App.Div. 1960). See, also, State v. Tumminello, 70 N.J. 187, 192-193 (1976).
R. 3:5-7(e) provides that if a motion to suppress is granted, the property shall be delivered to the person entitled thereto "unless otherwise subject to lawful detention."
We construe the term "lawful detention" as permitting interim relief to the State to protect its interest in suppressed evidence which, although not per se contraband, can be established by it in a civil forfeiture proceeding to be of such a nature  e.g., contraband of the instrumentality or the fruits of a crime  as to justify forfeiture. To warrant such detention, the State must show, preferably by way of live testimony, that there is probable cause to believe that the suppressed evidence is of that nature. The detention that may result from such a showing should be authorized only for a reasonable time to allow *484 the State an opportunity to institute an early forfeiture proceeding. In the present case a civil forfeiture action was instituted on February 25, 1980.
It is settled that the State can confiscate property even if it acquired possession thereof by a search and seizure proscribed by the Fourth Amendment. Farley v. $168,400.97, 55 N.J. 31, 46-50 (1969); State v. Sherry, 46 N.J. 172, 177 (1965), and even if the holder of the property is acquitted on the merits in a prior criminal proceeding. State v. McCoy, 145 N.J. Super. 340, 344-347 (App.Div. 1976); State v. Rodriquez, 130 N.J. Super. 57, 60-61 (App.Div. 1974), certif. den. 66 N.J. 325 (1974).
Generally, where money is involved, the defendant as possessor thereof is deemed to be the prima facie owner of it. Whatever reasonable suspicion may have been engendered by the proofs at the suppression hearing as to the truly legal status of the money, this rule should obtain even in determining whether temporary detention thereof is warranted. Thus, the burden here is on the State to show that the money was being used in or resulted from or was part of a criminal transaction. State v. Rodriquez, 138 N.J. Super. 575 (App.Div. 1976), aff'd o.b. 73 N.J. 463 (1977).
We are satisfied that predicated on the facts before the trial judge and the developments subsequent to the suppression hearing, which we will set forth below, the State has sustained its burden of proving probable cause for detention of the cash pending the conclusion of the existing civil forfeiture proceeding. We direct that it pursue that proceeding with expedition to its conclusion.
Subsequent to the suppression hearing, on November 16, 1979, defendant and his father appeared before the grand jury that failed to return an indictment. Defendant refused to testify. It appears that his father testified that the seized cash had nothing to do with his business and that he could not explain why his son would be carrying such a large sum of money.
Since the State contended that the money would not have been ordered returned to defendant had it had more time to *485 present its case before the judge, we granted its motion to expand the record before us to show the nature of the evidence that would have been presented before the judge.
The expanded record consists of two affidavits: one of Warford, a prosecutor's investigator, and the other of undercover narcotics investigator State Police Trooper Fagans. The information disclosed by those affidavits, which are based on data received from reliable confidential informants, in our view further supports probable cause for the temporary detention of the money here involved. Fagans' affidavit recites that he was an undercover narcotics investigator; that prior to defendant's arrest on August 8, 1979 he had received information from two reliable confidential informants that defendant was engaged in a conspiracy to distribute controlled dangerous substances within the county with Francis A. Smith, a convicted drug dealer. It further states that as an undercover investigator he met with defendant in Trenton in early August 1979 to buy 1/4 pound of marijuana but that the arrest intervened, preventing the purchase, and that when defendant was brought to the police station on the date of his arrest, he recognized Fagans. Additionally, he asserts that after August 8, 1979 he learned from the same informants that defendant was on his way to Philadelphia to purchase methamphetamine for Francis A. Smith and others when he was stopped by police before he could complete the transaction. Warford's affidavit, although not sufficiently detailed, states that prior to August 8, 1979 a reliable informant had advised him that defendant was a courier for Francis A. Smith, a convicted drug dealer.
Convinced as we are that the State has presently established a sufficient basis for a temporary detention of the money here involved, we reverse the order directing that the money be returned to defendant and, in the exercise of our original jurisdiction, we order that the money not be so returned pending the ultimate determination of the State's civil forfeiture action. However, to minimize the harm to defendant's interests in the event he is successful in the forfeiture action, in the interim the *486 money shall be deposited in a federally-insured interest bearing account in the joint names of the State and defendant's attorney, such account to be approved by the judge who heard the suppression motion.
We do not intend by this opinion to express any views as to the merits or any other facet of the pending civil forfeiture proceeding.
Reversed and remanded to the trial court for the entry of an order consistent with this opinion. We do not retain jurisdiction.