STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ONE 1978 FORD VAN, SERIAL NO. E11HBCC1893, PENNSYLVANIA REGISTRATION ERM–125; $15,193.00 U.S. CURRENCY: AND LOREAIN TOLLE A/K/A JOSEPH TYTUS, DEFENDANT-AP-PELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 10, 1987—Decided July 7, 1987.

Before Judges DREIER and STERN.

*Madden, Ferg, Barron & Gillespie*, Attorneys for appellant (*Christine Arians*, on the brief).

*Paul T. Koenig, Jr.*, Prosecutor, Mercer County, Attorney for respondent (*Richard H. Morton*, Assistant Prosecutor, of counsel and on letter brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant, Loreain Tolle, the ostensible owner of $14,987 declared forfeited to the State, has appealed from the forfeiture order. He has not appealed from that portion of the order also declaring forfeit a 1978 Ford Van in which the police found both illegal drugs and the disputed money.

The State's witnesses testified to the discovery in the rear of the van of more than five pounds of marijuana packaged in a triple-wrapped garbage bag placed in a box which also contained a small paper bag holding a smaller bag of marijuana. Nearby was a brown leather gym bag in which there was $14,000 in United States currency together with a loaded .38 caliber revolver and a small Ziploc bag containing seven pills, three methaqualone and four Valium. The police also discovered a suitcase with additional plastic Baggies, green garbage bags, metal tape, a bench beam scale and a small quantity of additional marijuana. In a separate leather bag was another triple beam scale, assorted plastic Baggies, scissors, and a disinfectant/deodorant spray. In the front of the van the police found $980 in United States currency, defendant's passport, checkbook and various other personal papers in an envelope as well as $7 in assorted coins in a small pouch.

A State expert testified that, considering the quality of the marijuana, it was worth between $2,500 and $3,000. Although the expert further testified that in his opinion the money

"would be proceeds from the sale of marijuana," the trial judge rejected the testimony as a net opinion.

Defendant Tolle testified that he had purchased the marijuana soon before his arrest for approximately $2,000 and expected to sell it quickly in bulk for approximately $3,000. He explained his possession of the $14,000 as being the proceeds of the sale of a Mercedes automobile and produced some documentation indicating that he had recently transferred the title to the car. He further claimed that he kept the money with him because he was a fugitive from Arizona and, although he had some business interests which he operated through a bank account and a Merrill Lynch cash management account, he paid his day-to-day living expenses from this cash.

The trial judge did not dispute defendant's allegation that the source of the cash was two $7,000 cashier checks representing the sales price of the Mercedes. The judge found it irrelevant whether the money in the van was from the sale of the Mercedes or that the sales proceeds had been deposited in the bank and the money found was from another source. Further, the court found that there had been no proof that the money in the van was the proceeds of drug sales. The trial judge determined, however, that the money "was used to purchase marijuana, among other things. Therefore, it is subject to forfeiture.... If he wasn't arrested, he probably would have gone the next day and bought more." The judge made no specific finding as to what portion of the money might have been used for marijuana or other illicit drug purchases for resale and which portion for defendant's legitimate living expenses. He merely concluded "that the money that he carried with him was used not only for his ordinary living expenses, but to purchase this marijuana which he admitted he was going to sell for profit...." He, therefore, determined:

I conclude from the defendant's testimony on cross-examination that he intended to use this money to buy, among other things, marijuana for resale. Whether he was going to use the entire sum which the State found consisting of $14,987 or not, I don't know and I don't think I have to conclude that he was

going to use all of the money for that purpose. He used some of the money that he had in his possession and I think it is reasonable to conclude that the money that was found was part of a larger sum which was used or intended to be used in the furtherance of illegal activity of buying marijuana for resale.

Accordingly, he granted the forfeiture judgment in the amount of $14,987.

The trial judge based his forfeiture order upon *N.J.S.A.* 2C:64–1a(2). We note that a similar basis could have been *N.J.S.A.* 2C:64–1a(3). These sections read:

2C:64–1. Property Subject to Forfeiture.

a.  Any interest in the following shall be subject to forfeiture and no property right shall exist in them:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

(2) All property which has been, or is intended to be, utilized in furtherance of an unlawful activity ...

(3) Property which has become or is intended to become an integral part of illegal activity, including, but not limited to, money which is earmarked for use as financing for an illegal gambling enterprise.[1]

There are few reported cases dealing with the forfeiture of a sum of money, where only part of the money might be used for illegal transactions. Generally, the funds were shown either directly or circumstantially to be exclusively the proceeds of or intended for an illegal transaction. *See, e.g., State v. One (1) 1979 Chevrolet Camaro Z–28*, 202 *N.J.Super.* 222, 232 (App. Div.1985). *See also People v. Snyder*, 52 *Ill.App.*3d 612, 10 *Ill.Dec.* 299, 367 *N.E.*2d 752 (1977) (funds found in a locked cabinet with a record book showing marijuana sales; no credible evidence to indicate any portion was not integrally related to narcotics); *Bozman v. Office of Finance*, 296 *Md.* 492, 463 *A.*2d 832 (1983) (money, narcotics and narcotics records found throughout house, but no explanation given for the presence of nearly $4,000 in defendant's bedroom); *Gatewood v. State*, 268 *Md.* 349, 301 *A.*2d 498 (1973) (money found in close proximity to

---

[1]Given defendant's explanation of the source of the funds, and no evidence to the contrary, subsection (4), governing "proceeds of illegal activities," is inapplicable here. As noted earlier, the trial judge rejected the State's expert's testimony that the money was the proceeds from the sale of marijuana.

the contraband); *Reed v. State,* 460 *So.*2d 115 (Miss.1984) (factual determination that $219,000 in United States and foreign currency was intended to be used in connection with illegal smuggling conspiracy); *Commonwealth v. Landy,* 240 *Pa.Super.* 458, 362 *A.*2d 999 (1976) (proceeds directly derived from and traceable to the sale of illegal pills); *Lettner v. Plummer,* 559 *S.W.*2d 785 (Tenn.1977) (cash in excess of $9,000 and large quantities of narcotics found around the premises and on the persons of owners previously arrested for narcotics violations, one of whom stated they intended to get out of the narcotics business shortly, warranted rejection of owners' explanation of the source of the funds).

These decisions, however, are fact-sensitive, and courts have also found a lack of proof of a sufficient nexus between the funds and illegal activity. *See United States v. Jenison,* 484 *F.Supp.* 747 (D.R.I.1980); *State v. Blair,* 435 *So.*2d 124 (Ala. Civ.App.1983); *Jackson v. Evans,* 379 *So.*2d 1236 (Ala.1979); *Commonwealth v. Myers,* 298 *Pa.Super.* 272, 444 *A.*2d 1170 (1982); *Henderson v. State,* 669 *S.W.*2d 385 (Tex.App.Ct.1984); *Plummer v. Commonwealth,* 215 *Va.* 185, 207 *S.E.*2d 861 (1974).

Only two cases specifically raised the issue of whether a portion of the money seized as opposed to the entire sum was used for the illegal activity. In *Commonwealth v. One Thousand Three Hundred and Forty Dollars,* 16 *Mass.App.Ct.* 950, 951, 451 *N.E.*2d 137, 138 (1983), the court determined that the forfeiture finding "although not clearly erroneous, is inadequate to support the judge's order that the *entire* sum seized from the defendant is to be forfeited to Commonwealth." (emphasis in original). Further, the case was not properly before the appellate court since no final judgment had been entered, and the matter was remanded for reconsideration of the order for judgment so that the trial judge could make findings on this issue. In *People v. Snyder, supra,* the defendant testified that "not all" of the $3,320 found was "dope money" but that the entire amount was "savings" towards the establishment of a

business. The Illinois court properly determined that given the prima facie proof produced by the State, the defendant had the burden "to produce credible evidence tending to show what portion of the $3,320 was not integrally related to the marijuana transactions." 10 *Ill.Dec.* at 302, 367 *N.E.*2d at 755.

In our case the trial judge first stated that he could not determine whether defendant intended to use the entire sum for the purchase of drugs but added that he did not have to make such a finding. He then concluded, however, that the money was used or intended to be used in furtherance of the illegal activity. From this language we cannot be sufficiently certain of the findings of the trial judge so as to pass upon his determination. If the court meant that defendant had available the approximately $15,000 and intended to use it all for the purpose of purchasing drugs if a sufficient opportunity arose, then the entire sum was subject to forfeiture. If, however, the drug transaction involved only about $3,000 and that the turnover time for sales in bulk such as the one described by defendant would warrant a finite number of these transactions, then only a portion of the funds would be subject to forfeiture. The judge might also have found that only the money in the rear or front of the van was "drug money," and that the other funds were to be used for defendant's living expenses.

The facts here, given defendant's detailed explanation of the source and purpose of the funds, are readily distinguishable from those in *State v. One (1) 1979 Chevrolet Camaro Z-28, supra,* in that in the presence of defendant's explanation, the court here was required to make specific findings of fact regarding the apportionment, if any, of the funds which were seized. Once defendant proves ownership of the funds, the State has the burden of showing the funds to be potentially subject to forfeiture under the quoted statute, and has the benefit of the rebuttable presumption established in *N.J.S.A.* 2C:64–3j. The standard of proof is by preponderance of the evidence. *State v. McCoy,* 145 *N.J.Super.* 340, 346 (App.Div.

1976); *State v. Rodriquez,* 130 *N.J.Super.* 57, 61 (App.Div. 1974), and appeal after remand 138 *N.J.Super.* 575, 577–578 (App.Div.1976), aff'd o.b. 73 *N.J.* 463 (1977). The Criminal Code has not changed this principle. *N.J.S.A.* 2C:1–1e. After the State has made such a *prima facie* showing of the connection between the cash and illegal drug activity (here the physical proximity and recent transaction), the defendant bears the burden of coming forward with sufficient evidence to allocate the funds between the illegal transactions or purpose and legitimate uses. *People v. Snyder, supra,* 10 *Ill.Dec.* at 302, 367 *N.E.*2d at 755. We are, therefore, constrained to remand this matter to the Law Division for further proceedings in conformity with this opinion.

Reversed and remanded; we do not retain jurisdiction.