787 A.2d 905

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ONE
HOUSE, PERSONALTY AND REALTY KNOWN AS 232 MULLI-
CA HILL ROAD, MULLICA HILL, HARRISON TOWNSHIP,
GLOUCESTER COUNTY, NEW JERSEY A/K/A BLOCK 57, LOT
1.01 ON THE TOWNSHIP OF HARRISON TAX MAP, DEFEN-
DANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 12, 2001—Decided December 31, 2001.

Before Judges KING, CUFF and WINKELSTEIN.

*Andrew N. Yurick*, Gloucester County Prosecutor, attorney for appellant (*Joseph A. Lowe*, Assistant Prosecutor, on the brief).

*Christopher C. Cona*, attorney for respondent.

The opinion of the court was delivered by

KING, P.J.A.D.

The single and novel issue on this appeal is the partial *in rem* forfeiture order of a non-divisible asset, a house and lot. Judge Tomasello ordered a forfeiture of $6000 representing the partial value of the house and lot. Owner was caught growing marijuana plants in a closet and the attic of the house. The State appeals and urges that a complete forfeiture of the house and lot or of owner's entire equity of $40,000 is required. We agree with the judge and affirm this partial and proportionate order of forfeiture.

I

On March 17, 1997 Investigator William Donovan of the Gloucester County Prosecutor's Office filed a complaint charging Frank Jones with alleged violations of *N.J.S.A.* 2C:35–10(a)(C),

possession of a controlled dangerous substance, marijuana, in an amount over fifty grams; *N.J.S.A.* 2C:35–5(a)(1),(b)(10), possession of a controlled dangerous substance, marijuana, with the intent to distribute; and *N.J.S.A.* 2C:35–5(a)(1),(b)(10), manufacture of a controlled dangerous substance, marijuana.

On April 3, 1997 the State filed a complaint for forfeiture of all property rights Frank Jones had in the 232 Mullica Hill Road, Mullica Hill, Harrison Township, Gloucester County property pursuant to *N.J.S.A.* 2C:64–1 to –9 generally and *N.J.S.A.* 2C:64–1(a)(2) specifically.[1]

On June 15, 1999 the grand jury returned a three-count indictment alleging Jones violated (1) *N.J.S.A.* 2C:35–10(a)(3), possession of marijuana, (2) *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(11), possession of marijuana with the intent to distribute; and (3) *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(11), manufacture of marijuana.

On April 13, 2000 Jones was found guilty by a jury of the manufacture of marijuana in a quantity of one ounce or more. The counts for possession and possession with intent to distribute were dismissed. On May 26, 2000 Jones was sentenced to two years probation and

> defendant shall attend drug/alcohol seminar conducted by adult probation as recommended by Joseph Hale and/or participate in any other substance abuse evaluations and treatment as directed by Probation Officer. Defendant shall submit to random urine monitoring as directed by Probation Officer. $1000 DEDR, $50 Lab Fee, $50 VCCB, $75 SSNA, $30 LEOPA payable through probation at the rate of $50 per month beginning 6/8/00. Plus $25 per month probation supervision fee, six (6) months revocation of driver's license.

---

[1] *N.J.S.A.* 2C:64–1 states in pertinent part:

> Property Subject to Forfeiture. a. An interest in the following shall be subject of forfeiture and no property right shall exist in them:
> * * * * *
> (2) All property which has been, or is intended to be, utilized in furtherance of an unlawful activity, including, but not limited to, conveyances intended to facilitate the perpetration of illegal acts, or buildings or premises maintained for the purpose of committing offenses against the State.

On October 12, 2000 the State moved for summary judgment. On November 27, 2000 Judge Tomasello granted the State's motion for summary judgment and awarded a partial judgment of $6,000 in lieu of a forfeiture of the entire property. The State appealed.

## II

In 1988 Frank Jones purchased the property for $45,000. The house is a single-story residence with a basement and an attic, roughly 3600 square feet, located on a 1.1 acre lot. Judge Tomasello determined that the size of each level is about thirty by forty feet or 1200 square feet. The property is valued for property tax purposes at $77,000. There is an outstanding mortgage of about $30,000 with eight years remaining to pay off the principal.

The police found the plants quite accidentally. On January 4, 1997 the police learned of a shooting at the house on 232 Mullica Road. Upon arrival, they found Jones was the victim. Jones was shot by a burglar and was flown by helicopter to the hospital. While responding to the call, the police found thirty marijuana plants growing in an aquarium tank in a bedroom closet on the first floor. They also found a "grow area" with a hydroponic system in a portion of the attic. The police seized the equipment and forty-eight plants, 144.8 grams of marijuana, from Jones' home.

During the criminal trial, testimony from Investigator Donovan and Jones indicated that the "grow area" occupied about one-quarter to one-third of the attic space. Jones testified that he grew the marijuana in the house for three reasons: secrecy, safety, and in support of his habit. Jones denied he grew the marijuana for distribution.

On the motion for summary judgment in the forfeiture action, the State argued it had satisfied the burden in proving that the house was used for an unlawful purpose; Jones argued that only a relatively small portion of the property actually was used for an

unlawful activity. The State agreed there was no indication the house was acquired through the manufacture of marijuana and defendant was uninvolved in the distribution of marijuana.

Judge Tomasello granted the State's motion for summary judgment but awarded the State only a partial judgment of $6,000, in lieu of a forfeiture of the entire property. The judge stated:

[W]e have 1.1 acres, 3,600 square foot property, a $40,000 equity. It would appear that some forfeiture is appropriate because clearly a portion of the property was in fact utilized for this illegal purpose.

However, as the court has already indicated, and as the record indicates, there was no growing in the 1.1 acres outside of the footprint of the house. A portion of the attic was utilized. When one, with any kind of real estate experience at all, and the illegal activity was not extended beyond the physical property, that is, the structure on this property, and to that small extent, as well, one clearly realizes that a hundred percent forfeiture would be grossly unfair.

Some forfeiture is appropriate. The court deems that approximately 12.5 percent, given discounts for the actual utilization of the entire property, as well as the minimal section of the attic given rise to a sum of $6,000, would be a reasonable amount of forfeiture. [The judge doubtless meant $5000.]

The State is in fact correct in its application of the law with respect to its request for forfeiture; however, the court feels that a hundred percent forfeiture would be confiscatory and it would not be in keeping with a proportionate response to this particular problem.

### III

The United States Supreme Court ruled in 1993 that the Excessive Fines Clause of the Eighth Amendment applies to forfeiture of property. *Austin v. United States,* 509 *U.S.* 602, 604, 113 *S.Ct.* 2801, 2803, 125 *L.Ed.*2d 488, 494 (1993). Our State's Constitution also contains an excessive fines clause. *N.J. Const.* Art. I, § 12; *see State v. Williams,* 286 *N.J.Super.* 507, 521, 669 *A.*2d 867 (Law Div.1995). In *Austin,* the Supreme Court remanded "for consideration of the question whether the forfeiture here at issue [a mobile home and a body shop] was excessive." 509 *U.S.* at 604, 113 *S.Ct.* at 2803, 125 *L.Ed.*2d at 494. Quite naturally, questions of proportionality arise in the wake of *Austin.* The cases have considered many factors, including the implications of the forfeiture of a home. *See* Deborah F. Buckman, *When Does Forfeiture of Real Property Violate Excessive Fines Clause of*

*Eighth Amendment—Post-Austin Cases,* 168 *A.L.R. Fed.* § 6b 375, 396 (2001). In many circumstances, "excessiveness is a highly subjective judgment." *Id.* at 397.

In this circumstance, we conclude that Judge Tomasello had the power to question seriously whether a total forfeiture was excessive. We also conclude that his decision to forfeit the value of 12.5% of the property did not constitute an abuse of discretion. The record is clear that defendant was not involved in distributing the marijuana he was manufacturing, either out of the home or elsewhere. The use of the illegal drug was strictly personal. Also, the manufacturing process occupied a relatively small portion of the property.

▊▊▊ We also find the judge's partial forfeiture true to the proportionality principles expressed in *State v. Seven Thousand Dollars,* 136 *N.J.* 223, 238, 642 *A.2d* 967 (1994). In the context of cash apportionment, Justice Clifford there stated that "once the State demonstrates that the seized money has a direct causal connection to unlawful activity, the burden shifts to the person challenging the forfeiture, the 'owner,' to show what portion of the money, if any, the court should ascribe to legitimate uses." *Ibid.* If the owner can present enough credible evidence "to allocate the funds between legal and illegal purposes, the court must limit forfeiture to only those funds connected with illegal activity." *Ibid.* We see no need to limit the equitable allocation procedure to cash seizures only, as the prosecutor urges here. We recognize that "[f]orfeiture statutes are generally disfavored in the law," and are "strictly construed against the State." *Ibid.*

Defendant Jones' underlying criminal conviction for the manufacture of marijuana established a rebuttable presumption that the property was utilized in the furtherance of an unlawful activity. *See N.J.S.A.* 2C:64–3(j). The claimant argues that only a first-floor closet and one-third of the attic was used for the manufacture of marijuana; the remainder of the use of the house grounds was legitimate. The State argues that *Seven Thousand Dollars* is distinguishable since this case addresses real property, not as

readily divisible as cash. The State contends that while only a portion of the house was actually occupied by the "grow area," the whole house was so utilized because it provided the electricity, water, heat, and concealment of the illegal activity.

Judge Tomasello rejected the State's argument and implied that a complete forfeiture of the house and property would violate the Excessive Fines Clause since only a portion of the property was used for the manufacture of marijuana. The judge found there were substantial portions of the property not utilized for unlawful purposes which should be exempt. While the State argues that the judge applied an incorrect standard, there is no suggestion the judge did not consider the intensity of the connection between the property and the illegal activity. He reasonably concluded that complete forfeiture was excessive in light of the fact "the illegal activity was not extended beyond the physical property, that is, the structure on [the] property, and to that small extent, as well, one clearly realizes that a hundred percent forfeiture would be grossly unfair."

This is a novel question for New Jersey but one recently addressed by the Pennsylvania Supreme Court in *Commonwealth v. 5043 Anderson Road, Buckingham Township, Bucks County*, 556 *Pa.* 335, 728 *A.*2d 907 (1999). There the claimant used the house and garage on his twenty-four-acre farm to conduct a lucrative business selling marijuana. The Commonwealth sought forfeiture of the entire twenty-four-acre parcel. The trial judge granted the Commonwealth's petition but limited the forfeiture to the house and garage, excluding the twenty-two acres, unimproved and unrelated to illicit activity. The intermediate appellate court affirmed.

On appeal to the Pennsylvania Supreme Court, the Commonwealth made three arguments, all of which that court rejected. First, the Commonwealth argued that since 42 *Pa. Cons.Stat.* § 6801 (2001) did not "explicitly provide for the division of real property, all property described in the deed must be forfeited." *Id.* at 908. The court disagreed and reasoned that "the language

of the statute plainly limits forfeiture to only that property, including any 'tract of land,' which is actually 'used or intended to be used' in furtherance of the criminal activity." *Ibid.*

Second, the Commonwealth argued that allowing trial judges to determine which properties are being used in the furtherance of unlawful activities will lead to absurd results. In support of this argument, the Commonwealth gave the example of a trial judge exempting from forfeiture the engine of a stationary vehicle from which drug deals were transacted. *Id.* at 909. The court reacted that the Commonwealth was ignoring the absurd results which could occur if the court adopted its approach to forfeiture. The court stated that under this approach, "the [C]ommonwealth would have the ability to legally seize a tract of land of unlimited size, so long as it [was] described in a single deed, once it show[ed] that a single marijuana plant was discovered growing anywhere upon it." *Ibid.* The court stated "the trial courts are capable of exercising a more common sense approach when determining the extent to which property is involved in illegal conduct." *Ibid.*

The court also rejected the Commonwealth's third argument: that the property should not have been divided since it was described in a single deed. The court concluded that when the property is "practicably divisible, only the property shown to have been illicitly used is forfeit," but when the property "is not practicably divisible, the entire property is forfeit." *Ibid.*

In the case before us, the State argues that the house and property are not practicably divisible because the lot is only 1.1 acres and is incapable of subdivision. However, the adoption of a rule requiring that a piece of property be practicably and legally divisible by severing the offending real estate and improvements from the remainder is an extremely narrow approach to this problem, especially because many local zoning ordinances preclude this type of subdivision.

One alternative to severability was articulated in *United States v. 18900 S.W. 50th Street, Ft. Lauderdale, Fla.,* 915 *F.Supp.* 1199 (N.D.Fla.1994), where the Government brought a civil forfeiture

action under 21 *U.S.C.* § 881(7) for a property used to facilitate the commission of a drug-related offense. The District Court concluded that the forfeiture of a trailer located on the property and the lot itself was not excessive. *Id.* at 1205. However, after considering the connection between the offense and the entire property, the court concluded that a forfeiture of the single-family residence located on the property would be excessive when there was neither evidence that the house was built or purchased with the proceeds of illegal drug activities nor any evidence that drug sales were conducted in the house. The court ordered separate judicial sales of the trailer and the lot with the unfinished house. The court awarded the government the entire proceeds from the sale of the trailer and 34% of the proceeds from the sale of the real property, "the 34% represents the percentage value of the lot relative to the appraisal amount of the unfinished house with the site value included." *Id.* at 1205, n. 19.

We find the owner's position here neither absurd nor unprecedented. We find no abuse of discretion in the forfeiture of 12.5% of owner's interest in the homestead property for growing marijuana for personal use. This is within the realm of a fair allocation, excluding "property that cannot properly be regarded as an instrumentality of the offense." *Austin,* 509 *U.S.* at 628, 113 *S.Ct.* at 2815, 125 *L.Ed.*2d at 509 (Scalia, J., concurring).

Affirmed, as modified to a $5000 forfeiture.